UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GARY STEPHEN SIGMAN,      :
                     :    Civil Action No. 07-1383(DMC)
         Petitioner,   :
                     :
         v.           :    **OPINION**
                     :
GRACE ROGERS, et al.,     :
                     :
        Respondents.   :

**APPEARANCES:**

    GARY STEPHEN SIGMAN, Petitioner pro se
    STU #324
    Northern Regional Unit/Special Treatment Unit
    P.O. Box 699 2-S, 30-35 Hackensack Avenue
    Kearny, New Jersey 07032

    DAVID L. DACOSTA, ESQ.
    OFFICE OF THE NJ ATTORNEY GENERAL
    25 Market Street, P.O. Box 112
    Trenton, New Jersey 08625
    Counsel for Respondents

**CAVANAUGH**, District Judge

    Petitioner Gary Stephen Sigman, a civilly committed person, pursuant to the Sexually Violent Predator Act ("SVPA"), N.J.S.A. 30:4-27.24 et seq., currently confined at the Special Treatment Unit ("STU") in Kearny, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The named respondents are the Administrator of the STU, Grace Rogers, and the Attorney General of the State of New Jersey.

    For the reasons stated herein, the Petition will be denied for lack of substantive merit and because petitioner fails to raise a colorable federal claim.

I.   BACKGROUND

A.   Procedural History[1]

On July 8, 2003, the Attorney General of New Jersey filed a petition for the civil commitment of Sigman under the New Jersey Sexually Violent Predator Act ("SVPA"), N.J.S.A. 30:4-24.24, et seq.  The petition was supported by the clinical certificates of two psychiatrists who asserted that Sigman falls within the SVPA. In addition, the petition contained Sigman's two judgments of conviction in a New Jersey state court, namely, Sigman's May 15, 1997 guilty plea to sexual assault and endangering the welfare of a child, and his April 10, 1989 guilty plea to attempted sexual assault.  On July 16, 2003, a temporary commitment order was entered.  (RE 5, Appellant's Brief on Appeal from final civil commitment order, Procedural History).  A review or final hearing was conducted on November 17, 2003 and December 8, 2003, before the Honorable Serena Perretti, J.S.C., and concluded on December 22, 2003.[2]  On December 22, 2003, Judge Perretti concluded that Jennings was a sexually violent predator ("SVP"), issuing a judgment of commitment and setting a one-year review hearing date.  (Id.).

_____

[1]  The procedural history is taken from the exhibits provided to this Court by the respondents and will be designated herein as Respondents' Exhibit ("RE").

[2]  Sigman had waived his right to have his hearing held within twenty days.

2

Sigman promptly filed a Notice of Appeal from the judgment of commitment on December 29, 2003.  In an unpublished opinion decided on December 30, 2005, the Superior Court of New Jersey, Appellate Division affirmed the judgment of commitment.  (RE 1). Sigman filed a petition for certification before the Supreme Court of New Jersey, which was denied by Order dated March 16, 2006.  (RE 7).

On or about March 21, 2007, Sigman filed this federal habeas petition under 28 U.S.C. § 2254.[3]  The State responded to the petition on August 16, 2007, providing a copy of the relevant state court record.  Sigman filed his objections or traverse to the State's answer on or about October 19, 2007.

B.   Factual History

The facts of this case were recounted below and this Court, affording the state court's factual determinations the

---

[3]  Pursuant to the "prison mailbox rule," a habeas petition is deemed filed on the date the prisoner delivers it to prison officials for mailing, not on the date the petition is ultimately filed with the court.  See Houston v. Lack, 487 U.S. 266, 270-71 (1988); see also Burns v. Morton, 134 F.3d 109, 112-13 (3d Cir. 1988) (applying prison mailbox rule set forth in Houston, which dealt with filing of an appeal, to a pro se prisoner's filing of a habeas petition).  Although the Court is unable to determine the exact date that Sigman handed his petition to STU officials for mailing, he signed and dated his petition on March 21, 2007. See Henderson v. Frank, 155 F.3d 159, 163-64 (3d Cir. 1988) (using date prisoner signed petition as date he handed it to prison officials for purposes of calculating timeliness of habeas petition).  Accordingly, this Court finds that March 21, 2007 was the date this petition was filed for purposes of calculating the timeliness of the petition, and not the date the petition was received by the Clerk of the Court on March 23, 2007.

3

appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply

reproduce the Appellate Division's factual recitation, as set

forth in its December 30, 2005 unpublished Opinion on

petitioner's direct appeal from his judgment of commitment:

> [Sigman], who is now 49, pled guilty to second degree
> attempted sexual assault and was sentenced on January 19,
> 1990, to five years at the Adult Diagnostic and Treatment
> Center ("ADTC"), where he stayed until 1993.  Before that
> sentence was imposed, [Sigman] admitted to a clinical
> psychologist that he had "direct sexual contact" with three
> adolescent males.  He also admitted engaging in sexual
> activity with a fifteen year old boy.  The psychologist
> concluded that [Sigman] had a "repetitive, compulsive sexual
> preoccupation with young adolescent males."  In late 1995,
> [Sigman] began picking up several special education
> students, one age fourteen and the other two fifteen, and
> performing fellatio on them on numerous occasions.  As a
> result of that activity, [Sigman] was arrested and
> eventually pled guilty to three counts of second degree
> sexual assault and other charges.  He received three
> concurrent ten year terms for the sexual assault charges and
> lesser concurrent terms for the related offenses.  Before
> his scheduled release, the commitment proceeding was
> instituted.  The bench trial began after Judge Perretti
> denied [Sigman's] application for a jury trial.
>
> The Attorney General presented two witnesses: Dr. Zeiguer, a
> psychiatrist, and Dr. Carlson, a psychologist.  Based on his
> reviewing of the customary background materials and his
> lengthy interview of [Sigman], Dr. Zeiguer opined that
> [Sigman] "suffers from paraphilia NOS, which manifests in
> engaging in illegal sex with post-pubescent boys under
> circumstances in which he knew he could be detected."  He
> noted as important that while in the ADTC, [Sigman]
> continued to correspond inappropriately with his victims.
> He characterized [Sigman's] risk to recommit sexual offenses
> as "very high" because of his failure to respond to
> treatment at the ADTC.  Based primarily on a variety of
> tests and his interview, Dr. Carlson concluded that [Sigman]
> suffers from paraphilia NOS and a personality disorder, and
> that his release would pose a significant threat to the
> community.

Dr. Timothy P. Foley, a psychologist, testified for
[Sigman].  Dr. Foley, relying on the same information as did
the State's experts, plus some tests he gave [Sigman],
reached a diagnosis of avoidant personality disorder, a
condition that interferes with the ability to have
appropriate sexual relationships with adults.  This, he
said, predisposes [Sigman] to become involved with
adolescent boys.  But he further concluded that there was
only a medium risk of that occurring if [Sigman] received
appropriate community supervision and aftercare treatment.

Judge Perretti was "clearly convinced" that [Sigman]
suffered from "abnormal mental conditions and personality
disorders that adversely impacted his volitional, cognitive,
and emotional capacities in such a way as to predispose him
to commit sexually violent acts," and she was further
clearly convinced that if not confined, [Sigman] was highly
likely to recidivate.  Given our limited scope of review, In
re Civil Commitment of J.P., 339 N.J. Super. 443, 449 (App.
Div. 2001), and the nature of the evidence submitted, we
cannot say that Judge Perretti erred in committing [Sigman].

Judge Perretti's rulings on the admission of evidence were
in accord with the case law.  See, for example, In re Civil
Commitment of A.E.F., 377 N.J. Super. 473, 490 (App. Div.
2005); State v. Vandeweaghe, 351 N.J. Super. 467, 480 (App.
Div. 2002), aff'd, 177 N.J. 229 (2003).

(RE 1, Appellate Division Opinion, decided December 30, 2005, at

pp. 3-5).

## II.   STATEMENT OF CLAIMS

Sigman raises the following claims for habeas relief in his

petition:

Ground One: The State failed to prove, by clear and

convincing evidence, each element under N.J.S.A. § 30:4-27.24 et

seq., in violation of fundamental fairness and the Fourteenth

Amendment.

Ground Two: The trial court permitted introduction of, and relied on, hearsay evidence in finding petitioner to be an SVP in violation of the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment.

Ground Three: Petitioner was denied his right to a jury trial in violation of the Fourteenth Amendment.

Ground Four: The trial court relied upon expert testimony that petitioner suffers from a paraphilia under the DSM-IV-TR, notwithstanding the fact that petitioner does not meet that diagnostic criterion, violating the Fourteenth Amendment.

Ground Five: Ineffective assistance of counsel in violation of the Sixth Amendment.

Ground Six: The state court relied upon expert testimony that was not grounded in accepted standards of forensic practice, and thus, such unreliable evidence infected the proceedings so as to render the trial fundamentally unfair in violation of the Fourteenth Amendment.

The State contends that the petition should be denied for lack of substantive merit. The State also argues that the petition is time-barred.

III.  STATUTE OF LIMITATIONS ANALYSIS

Respondents argue that the petition should be dismissed as time-barred under 28 U.S.C. § 2244(d). The limitation period for

6

a § 2254 habeas petition is set forth in 28 U.S.C. § 2244(d), which provides in pertinent part:

> (1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; ...
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

A state-court judgment becomes "final" within the meaning of § 2244(d)(1) by the conclusion of direct review or by the expiration of time for seeking such review, including the 90-day period for filing a petition for writ of certiorari in the United States Supreme Court.  See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999); U.S. Sup. Ct. R. 13.

This Court finds that Sigman timely filed his petition. Sigman filed an appeal from the December 2003 judgment of civil commitment, and the Appellate Division affirmed in a December 30, 2005 opinion.  The New Jersey Supreme Court denied Sigman's petition for certification on March 16, 2006.  Allowing petitioner the 90 days for filing a petition for certiorari in the United States Supreme Court, Sigman had one year from June 16, 2006, or until June 16, 2007, within which to file this

habeas petition to be timely under 28 U.S.C. § 2244(d)(1).  As
set forth above, Sigman caused this petition to be filed on March
21, 2007, almost three months before the one-year limitations
period expired.  Consequently, the habeas petition is timely, and
this Court rejects respondents' contention that the petition
should be dismissed as time-barred.

IV.   <u>STANDARD OF REVIEW FOR HABEAS PETITION</u>

A pro se pleading is held to less stringent standards than
more formal pleadings drafted by lawyers.  <u>Estelle v. Gamble</u>, 429
U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).
A pro se habeas petition and any supporting submissions must be
construed liberally and with a measure of tolerance.  <u>See</u> <u>Royce</u>
<u>v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney</u>
<u>General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v.</u>
<u>Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert. denied</u>, 399
U.S. 912 (1970).  Because petitioner is a <u>pro</u> <u>se</u> litigant, the
Court will accord his petition the liberal construction intended
for <u>pro</u> <u>se</u> petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective
Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas
matters must give considerable deference to determinations of the
state trial and appellate courts.  <u>See</u> 28 U.S.C. § 2254(e);
<u>Duncan v. Morton</u>, 256 F.3d 189, 196 (3d Cir.), <u>cert</u>. <u>denied</u>, 122
S.Ct. 269 (2001); <u>Dickerson v. Vaughn</u>, 90 F.3d 87, 90 (3d Cir.

1996)(*citing* <u>Parke v. Raley</u>, 506 U.S. 20, 36 (1992)).  Section

2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the judgment
> of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim -
> > (1)   resulted in a decision that was contrary to, or
> >       involved an unreasonable application of, clearly
> >       established Federal law, as determined by the
> >       Supreme Court of the United States; or
> > (2)   resulted in a decision that was based on an
> >       unreasonable determination of the facts in light
> >       of the evidence presented in the State court
> >       proceeding.

28 U.S.C. § 2254(d).

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme

Court explained that subsection (d)(1) involves two clauses or

conditions, one of which must be satisfied before a writ may

issue.  The first clause, or condition, is referred to as the

"contrary to" clause.  The second condition is the "unreasonable

application" clause.  <u>Williams</u>, 529 U.S. at 412-13.  In the

"contrary to" clause, "a federal court may grant the writ if the

state arrives at a conclusion opposite to that reached by [the

Supreme] Court on a question of law or if the state court decides

a case differently than [the Supreme] Court has on a set of

materially indistinguishable facts."  <u>Id</u>.  Under the

"unreasonable application" clause, a federal court may grant the

writ if "the state court identifies the correct governing legal

principle from [the Supreme] Court's decisions but unreasonably

applies that principle to the facts of [the petitioner's] case." Id. at 413. Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief. Id. at 411. See also Werts, 228 F.3d at 197; Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999), cert. denied sub nom Matteo v. Brennan, 528 U.S. 824 (1999).

Consonant with Williams, the Third Circuit has held that § 2254(d)(1) requires a federal habeas court to make a two step inquiry of the petitioner's claims. First, the court must examine the claims under the "contrary to" provision, identify the applicable Supreme Court precedent and determine whether it resolves petitioner's claims. See Werts, 228 F.3d at 196-97; Matteo, 171 F.3d at 888-891. If the federal court determines that the state court's decision was not "contrary to" applicable Supreme Court precedent, then the court takes the second step of the analysis under § 2254(d)(1), which is whether the state court unreasonably applied the Supreme Court precedent in reaching its decision. Werts, 228 F.3d at 197.

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result. Id. AEDPA prohibits such de novo review.

Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was objectively unreasonable. Id. In short, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent. Id.; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v. Janecka, 312 F.3d 597, 605-06 (3d Cir. 2002), cert. denied, 538 U.S. 1000 (2003)(citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)). With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment. See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000). See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1). The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and

11

convincing evidence.  See Duncan, 256 F.3d at 196 (*citing* 28

U.S.C. § 2254(e)(1)).  Consequently, a habeas petitioner "must

clear a high hurdle before a federal court will set aside any of

the state court's factual findings."  Mastracchio v. Vose, 274

F.3d 590, 597-98 (1st Cir. 2001).

## V.  THE NEW JERSEY SEXUALLY VIOLENT PREDATOR ACT

The New Jersey SVPA, N.J.S.A. 30:4-27.24 *et seq.*, provides

for the custody, care and treatment of involuntarily committed

persons who are deemed to be sexually violent predators ("SVP").

N.J.S.A. 30:4-27.26.  The New Jersey Department of Corrections

("DOC") operates the facilities designated for SVPs, N.J.S.A.

30:4-27.34(a); and the New Jersey Department of Human Services

("DHS") provides for their treatment.  N.J.S.A. 30:4-27.34(b).

The SVPA was amended in 2003 to require that regulations be

promulgated jointly by the DOC and the DHS, in consultation with

of the Attorney General, taking "into consideration the rights of

the patients as set forth in section ten of P.L. 1965, c. 59 (C.

30:4-24.2) ... [to] specifically address the differing needs and

specific characteristics of, and treatment protocols related to,

sexually violent predators."  N.J.S.A. 30:4-27.34(d).

In passing the SVPA, the New Jersey Legislature made

specific findings regarding SVPs.  N.J.S.A. 30:4-27.25.  The

Legislature noted that it was necessary to modify the previous

civil commitment framework and additionally separate SVPs from

12

other persons who have been civilly committed.  Id.  The SVPA

defines a SVP as:

> ... a person who has been convicted, adjudicated delinquent
> or found not guilty by reason of insanity for commission of
> a sexually violent offense, or has been charged with a
> sexually violent offense but found to be incompetent to
> stand trial, and suffers from a mental abnormality or
> personality disorder that makes the person likely to engage
> in acts of sexual violence if not confined in a secure
> facility for control, care and treatment.

N.J.S.A. 30:4-27.26(b).

When it appears that a person may meet the criteria of a

SVP, the "agency with jurisdiction"[4] must provide notice to the

New Jersey Attorney General ninety (90) days, or as soon as

practicable, before the anticipated release of a person who has

been convicted of a sexually violent offense.  N.J.S.A. 30:4-

27.27(a)(1).  If the Attorney General determines that public

safety warrants the involuntary civil commitment of a SVP, the

Attorney General may initiate a court proceeding by presenting to

a judge for immediate review the certification of two doctors,

one of whom must be a psychiatrist, who have examined the person

no more than three days before the petition for commitment.

N.J.S.A. 30:4-27.28; 30:4-27.26; see also In the Matter of

Commitments of M.G. and D.C., 331 N.J. Super. 365, 373 (2000).

Once these documents are received by the court, the court must

---

[4]  An "agency with jurisdiction" refers to the agency which
releases a person who is serving a sentence or a term of
confinement.  This term includes the NJDOC.  N.J.S.A. 30:4-27.26.

13

determine whether there is probable cause to believe that the person is a SVP. N.J.S.A. 30:4-27.28(f). If the court so finds, the court will issue an order authorizing temporary commitment to a secure facility designated for the care, control and treatment of SVPs pending a final hearing, and a final hearing date will be scheduled within twenty (20) days of the temporary commitment. N.J.S.A. 30:4-27.28(f) and 30:4-27.29(a). The SVPA mandates that the person deemed to be a SVP shall not be released from confinement before the final hearing. N.J.S.A. 30:4-27.28(f).

The person deemed to be a SVP and his/her counsel shall be provided with the following at least ten (10) days before the final hearing: (1) copies of the clinical certificates and supporting documents, (2) the temporary court order, and (3) a statement of the SVP's rights at the final hearing.[5] N.J.S.A. 30:4-27.30(a).

At the final hearing, the court must find by clear and convincing evidence that the SVP is in need of continued involuntary commitment to issue an order of involuntary commitment. N.J.S.A. 30:4-27.32(a). The SVP is not permitted to

_____

[5] A SVP is afforded the following rights at his/her court hearing: (1) the right to be represented by counsel or, if indigent, by appointed counsel; (2) the right to be present at the court hearing unless the court determines that because of the person's conduct at the court hearing the proceeding cannot reasonably continue while the person is present; (3) the right to present evidence; (4) the right to cross-examine witnesses; and (5) the right to a hearing in camera. N.J.S.A. 30:4-27.31.

appear at the hearing without counsel, and he will be appointed counsel if indigent.  N.J.S.A. 30:4-27.29(c).  The psychiatrist on the SVP's treatment team who has conducted a personal examination of the SVP within five (5) days of the final hearing, shall testify at the hearing as to the clinical basis for involuntary commitment as a SVP.  N.J.S.A. 30:4-27.30(b).  Other members of the person's treatment team and other witnesses with relevant information, offered by the SVP or by the Attorney General, are permitted to testify at the final hearing.  Id.

Those persons committed under the SVPA shall receive annual review hearings.  N.J.S.A. 30:4-27.35.  A SVP may be released from involuntary civil commitment upon recommendation of the DHS or by the SVP's own petition for discharge.  N.J.S.A. 30:4-27.36.

VI.   DISCUSSION OF CLAIMS

A.   Evidential Claims

In Ground One of his petition, Sigman first contends that the State failed to prove, by clear and convincing evidence, each element under the SVPA statute, in violation of the Fourteenth Amendment.  Specifically, Sigman argues that the State's expert testimony substantially deviated from accepted professional standards in diagnosing petitioner with paraphilia and a personality disorder notwithstanding the fact that petitioner did not meet the professional diagnostic criteria for this diagnosis. Sigman also argues that the court's determination that petitioner

15

was highly likely to re-offend was not grounded on any scientific or empirical evidence that could predict re-offense.

In a similar vein, in Grounds Four and Six, Sigman contends that the trial court relied on expert testimony that petitioner suffers from a paraphilia under the DSM-IV-TR, despite the fact that he does not meet that criteria, and that the trial court relied on the State's experts' testimony that was not grounded in accepted standards of forensic practice.

These claims were raised on direct appeal.  The Appellate Division rejected Sigman's arguments as "without sufficient merit to warrant discussion in a written opinion."  (RE 1).  Further, the appellate court "affirm[ed] substantially for the reasons expressed by Judge Perretti in her thorough and well-reasoned oral opinion delivered on December 22, 2003.  Specifically, the Appellate Division found that:

> Judge Perretti was "clearly convinced" that [Sigman] suffered from "abnormal mental conditions and personality disorders that adversely impacted his volitional, cognitive, and emotional capacities in sch a way as to predispose him to commit sexually violent act," and she was further clearly convinced that if not confined, [Sigman] was highly likely to recidivate.

(RE 1 at pg. 5).

In her oral opinion, Judge Perretti discussed the diagnosis of personality disorder NOS, as opined by the State experts.  She found that

> these are characteristics that are borne out in the records -- the respondent fails to accept the conventional rules,

16

either legal or therapeutic, and relies on his own
intuitions.  He is an unconventional thinker, he is a risk-
taker.  He overvalues his own point of view.  He is not able
to give in to society's views.  He has no fear.  These
characteristics of his personality disorder, which are part
of the diagnosis of narcissistic traits, contribute to the
evaluation of his risk as high.  He fails to take
responsibility, fails to respond to treatment or
incarceration.  And this gives the psychiatrist the
conviction that this is a high-risk person.

(RE 4, T3 60:13-61:2).[6]

Judge Perretti also discussed the validity of the diagnosis

of paraphilia NOS, and found that the diagnosis did indeed meet

the criteria of the DSM diagnosis:

> [Dr. Zeiguer] grounds his diagnosis on the DSM; and, ...
> look[ing] at Criterion A first.
> "Recurrent intent, sexual arousing fantasies, sexual urges
> and behaviors generally involving children or other
> nonconsenting persons that occur over a period of at least
> six months."
> We must say that all of these victims were children.  None
> of them were adults.  They were all under the age of sixteen
> years.
> They were all nonconsenting persons.  They couldn't consent.
> Criterion B goes beyond the mere attraction.  Here, we did
> have attraction, sexual urges, and we did have behaviors.
> And we also have Criterion B:
> "The behavior, sexual urges, or fantasies cause clinically
> significant distress or impairment in social, occupational,
> or other important areas of functioning."
> His actions, based upon his recurrent sexually -- sexual
> arousals put him in prison twice for a long time.  And that
> would seem to me to be a clinically significant impairment
> in social, occupational, and other important areas of
> functioning.

---

[6]   The transcripts of the state court civil commitment
proceedings are designated as follows:

RE 2 - T1 - November 17, 2003 transcript
RE 3 - T2 - December 8, 2003 transcript
RE 4 - T3 - December 22, 2003 transcript

(T3 61:7-62:7).

Judge Perretti carefully reviewed petitioner's expert testimony (T3 63:8-64:19), but concluded that Dr. Foley's position was "internally inconsistent" and she rejected it. (T3 64:20-22).

Judge Perretti also made specific determinations regarding the discrepancies in the actuarial scorings:

> One of them, the MnSOST, says there is no risk a zero risk. The other, Static 99, says there is a risk; either a four, a five, a six, or a seven, depending how you read the directions for scoring.  Dr. Foley concedes it could be as high as a five; the State experts, it could be as low as a six.  High is a -- six is a high risk, seven is also a high risk, so there's no difference between a six and a seven, and a five is a high-medium.
> But my problem is you've got the other test, which says it's a zero.  In my mind, they simply cancel each other out. ... Well, if I consider both, I consider zero and high risk to cancel each other out.  There is simply no possible validity in my finding that they average each other out.  That is logically not only impossible, but offensive.  One is right and one is wrong, and nobody can say which.  So, so far as I'm concerned, neither is persuasive, and I will simply disregard them both.
>
> I heard lengthy testimony this morning, which was extremely interesting, about the extent to which the makers of the Static go to explain the ways for scoring, so as to make this test as reliable as possible.  And, yet, all that I've heard today convinces me that on at least the two issues that were raised here, the score on prior offenses and the score on non-contact offenses, they're both either ambiguous and/or subjective in the present case.  And, anyway, the score doesn't mean anything to me for the reasons that I've already stated.

(T3 65:2-66:13).

The trial court concluded:

> Now all of this evidence from Dr. Zeiguer, from Dr. Carlson,
> the documentary evidence which I cited, the revelations in
> his own hand of the respondent's exceedingly deviant arousal
> and urges and fantasies, his repetitive acting out upon them
> convince me that this respondent is a sexually violent
> predator.
> He suffers from abnormal mental condition and personality
> disorders that adversely impact his volitional, cognitive,
> and emotional capacities in such a way as to predispose him
> to commit sexually violent acts.
> I find that he has little or no control of his sex-offending
> behavior, and I find that it is highly likely that he will
> recidivate if not confined here for care, custody, and
> further treatment, and I'll sign a one-year order. ...
> This evidence presented by the State is clear and
> convincing; and as a result, I am clearly convinced that --
> and I already said.

(T3 68:15-69:20).

This Court, having carefully reviewed the state record of

the proceedings, namely, the expert testimony and documentary

evidence relied upon by Judge Perretti, finds no merit to

petitioner's claims under Grounds One, Four and Six.

Specifically, as noted above, Judge Perretti found that the State

experts' diagnosis of paraphilia and personality disorders did

clearly meet the diagnostic criteria for such diagnoses under the

DSM.  Sigman simply takes a different position, preferring his

own expert's opinion, Dr. Foley, who Judge Perretti rejected

altogether.

Moreover, this Court agrees with the State, finding that

Sigman's focus on actuarial instruments, in particular, Static

99, to be misplaced.  Judge Perretti considered the actuarial

scorings, and found them to be completely inconsistent,

19

cancelling each other out, and thus, ultimately rejecting them.
Instead, she based her decision on all the other psychiatric
evidence and testimony, criminal history, treatment records, and
petitioner's own revelations in concluding that Sigman was highly
likely to re-offend.  This evidence was clear and convincing to
the trial court.

In Sigman's traverse, it would appear that he is arguing
that Judge Perretti's decision to discount the actuarial
assessments rendered her decision to civilly commit him as
baseless because it was not grounded in accepted standards of
forensic practice.  In other words, it would seem that Sigman is
asserting that the actuarial scores, and only the one his expert
discussed, should have been considered to negate a finding for
the need of commitment.  This Court acknowledges that New Jersey
state courts have allowed the fact-finding judge to reject
actuarial instruments in rendering a decision as to the
likelihood of recidivism.  For instance, in In re the Commitment
of R.S., 339 N.J. Super. 507 (App. Div. 2001), aff'd, 173 N.J.
134 (2002), the New Jersey appellate court recognized that
actuarial instruments are not predictive as to a particular
individual's likelihood of recidivism, but rather, may be used to
show whether an individual having characteristics like others in
a group that recidivates 70% of the time may be more likely to
recidivate.  R.S., 339 N.J. Super. at 520.  Thus, while allowing

20

a trial judge to consider actuarials as one factor in reaching a
likelihood of recidivism determination, the R.S. court cautioned
that:

> SVPA commitment hearings are tried before a judge [who]
> understands that it is the ultimate decision maker and must
> reach a conclusion based upon all the relevant evidence
> 'psychiatric or otherwise - according each type such weight
> as [it] see[s] fit.' [citation omitted]. An experienced
> judge who is well informed as to the character of the
> actuarial instruments ... can accord the appropriate weight
> to [them] in any given case, or reject them.

Id. at 539-40 [emphasis added].  In affirming the appellate
court, the New Jersey Supreme Court commented that "[w]e
anticipate that the trial court will regard the actuarial
assessment information, ... as simply a factor to consider,
weigh, or even reject, when engaging in the necessary fact
finding under the SVPA."  173 N.J. at 137.

Here, this Court finds that there was sufficient evidence
for Judge Perretti to conclude by clear and convincing evidence
that Sigman was a sexually violent predator in need of further
confinement.  She did not have to rely on the actuarial
assessments proffered, especially where they completely negated
each other.  The state trial and appellate courts specifically
noted that Sigman's sexual criminal history, his behavior while
confined, and petitioner's diagnosis of abnormal mental
conditions and personality disorders that "adversely impacted his
volitional, cognitive, and emotional capacities," predisposes
petitioner to commit sexually violent acts, and if not confined,

made petitioner highly likely to re-offend.  (RE 1 at pg. 5; T3
68:22-69:1).

Thus, Sigman has not shown, as required by 28 U.S.C. §
2254(d), that the state court determinations have "resulted in a
decision that was contrary to, or involved an unreasonable
application of clearly established Federal law, as determined by
the Supreme Court of the United States."  Nor has petitioner
demonstrated that the state court rulings "resulted in a decision
that was based on an unreasonable determination of the facts in
light of the evidence presented in the State court proceeding."

Instead, Sigman merely disagrees with the state court
evidential rulings, which is a matter of state law not subject to
federal habeas review unless he was denied fundamental fairness
at trial.  Sigman simply can not accept Judge Perretti's findings
in which she rejected petitioner's expert opinion and found that
the State experts' opinion and all the other relevant evidence
clearly and convincingly established that petitioner was likely
to engage in future acts of sexual violence, if not confined.
There is nothing in the state record to show that Sigman was
denied due process or fundamental fairness.[7]  Accordingly,

_____

[7] "Due process requires that the nature of commitment bear
some reasonable relation to the purpose for which the individual
is committed." Foucha v. Louisiana, 504 U.S. 71, 79 (1992)
(citing Jones v. United States, 463 U.S. 354, 368 (1983); Jackson
v. Indiana, 406 U.S. 715, 738 (1972)).  In addition, "due process
requires that the conditions and duration of confinement under [a
sexual predator commitment act] bear some reasonable relation to

22

Grounds One, Four and Six, concerning weight of evidence concerns, will be denied for lack of merit.

B.  Admission of Hearsay Evidence

In Ground Two of his Petition, Sigman argues that the state court's admission of, and reliance on, hearsay evidence violated both the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment.  Sigman raised this claim on direct appeal, and the Appellate Division held that petitioner's arguments were "without sufficient merit to warrant discussion," and found that Judge Perretti's rulings on the admission of evidence were in accord with state case law.  (RE 1, at pp. 3, 5).

Specifically, Judge Perretti overruled Sigman's objections to the admission of hearsay evidence with respect to the expert reports of Dr. Zeiguer and Dr. Carlson, finding:

> Insomuch as the reports themselves are hearsay and the testimony is the evidence, these reports become evidence, they become the testimony of the witness.  Insofar as they contain hearsay, these are expert reports and they will be telling me what hearsay was relied upon.  In that regard, these experts are, we will be here [sic] I'm sure, customarily in their profession using such hearsay and it's necessary for the Court to study that in order to evaluate the credibility of the witness and the weight of their opinions.
>
> As to the PSIs, of which there are two, these are court documents.  If they contain admissible hearsay, that is

_____

the purpose for which persons are committed." Seling v. Young, 531 U.S. 250, 265 (2001) (citing Foucha v. Louisiana, 504 U.S. at 79; Youngberg v. Romeo, 457 U.S. 307, 324 (1982))); and Jackson v. Indiana, 406 U.S. 715, 738 (1972)).

hearsay not otherwise admissible, that should be called
specifically to my attention.  The ADTC evaluation reports -
- and there are two of them, Exhibits 4 and 13 -- these are
court documents prepared for the Court for purposes of
sentence.  They have the added benefit of having been either
the subject of a hearing presentence or not wishing to have
a hearing presentence.

The termination reports are business records and, as I said
before, if there are inadmissible hearsay items, they should
be called to my attention.  Also, I have every reason to
believe that both witnesses will have or will mention that
they have relied upon these other exhibits, so everything
comes in either on a basis for purposes of assessing
credibility and weight of the experts' testimony.

(T1 4:8-5:12).

The Sixth Amendment right of confrontation, and its

attendant limitations on the use of hearsay evidence does not

attach to civil proceedings such as the commitment proceeding at

issue here.  See, e.g., Carty v. Nelson, 426 F.3d 1064, 1073 (9th

Cir. 2005), cert. denied, 547 U.S. 1130 (2006); U.S. v. Baker,

836 F. Supp. 1237, 1246 (E.D.N.C. 1993).  Moreover, Sigman has

cited no Supreme Court case, and this Court has located none,

holding that the Due Process Clause prohibits the use of hearsay

evidence in civil commitment proceedings.  Nor does the Matthews

v. Eldridge[8] balancing test compel such a conclusion.  While the

_____

    [8]  Matthews v. Eldridge, 424 U.S. 319 (1976).  The Supreme
Court held that the dictates of due process requires
consideration of three factors: (1) the private interest affected
by the official action; (2) the risk of erroneous deprivation of
such interest through the procedures used, and the probable
value, if any, of additional or substitute procedural safeguards;
and (3) the Government's interest, including the function
involved and the fiscal and administrative burdens that the
additional or substitute procedural requirement would entail.
Id. at 334.

loss of liberty associated with civil commitment is indeed, severe, the government's interest in confinement of sexually violent predators is similarly significant. The effect of the admission of the hearsay evidence is tempered by the "clear and convincing" burden of proof imposed on the government and the requirement of annual reviews. Moreover, petitioner does not contend that he was prevented from presenting competent contrary evidence as to his mental condition. To the contrary, Sigman presented his own competing expert witness, who likewise relied on hearsay evidence.

This Court also takes note that the Supreme Court has allowed the use of hearsay evidence in other situations involving the loss of liberty. For instance, in determining what process is due a citizen-detainee challenging his classification as an enemy combatant, and the resultant loss of liberty, a plurality of the Supreme Court held that the exigencies of that situation would permit hearsay evidence to be accepted as the most reliable available evidence from the government, provided the detainee is given an opportunity to present his own factual case to rebut that evidence. See Hamdi v. Rumsfeld, 542 U.S. 507, 533-39 (2004). Therefore, this Court finds that the state court's determination that petitioner was not deprived of his constitutional rights by the use of hearsay testimony is not contrary to or an unreasonable application of Supreme Court precedent.

Nor was it unreasonable for the state court to conclude that there was enough evidence in the record to support the commitment under the "clear and convincing" evidence standard. (See T3 68-69, and this Opinion at § VI.A).

Further, even if the state admitted hearsay evidence over petitioner's objections, this Court finds that Sigman's claim has no merit because a state's misapplication of its own law does not constitute a violation of due process except in "rare" cases only. Generally, issues as to the admissibility of evidence, as asserted by Sigman here, are questions of state law and not subject for federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 68 (1991); Johnson v. Rosemeyer, 117 F.3d 104, 112-15 (3d Cir. 1997). See also Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir.), cert. denied, 534 U.S. 973 (2001). Federal courts must afford the states deference in its determinations regarding evidence and procedure. See Crane v. Kentucky, 476 U.S. 683, 690 (1986). It is well-established that "a state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations omitted), cert. denied, 522 U.S. 1109 (1998).

However, evidentiary rulings may violate due process when the petitioner "was denied fundamental fairness at trial."

Hutchins v. Hundley, 1991 WL 167036 at *4 (D.N.J. Aug. 22, 1991)(Wolin, J.)(citations omitted); see also Kontakis v. Beyer, 19 F.3d 110, 120 (3d Cir. 1994), cert. denied, 513 U.S. 881 (1994); Lisenba v. California, 314 U.S. 219, 228, 236 (1941)(holding that state court's evidentiary rulings may form the basis for habeas relief when they "so infused the trial with unfairness as to deny due process of law").

The appropriate inquiry is "whether the claimed error of law is a fundamental defect which inherently results in a complete miscarriage of justice or in an omission inconsistent with the rudimentary demands of fair procedure." Hutchins, 1991 WL 167036 at *4 (citing United States v. De Luca, 889 F.2d 503, 506 (3d Cir. 1989), cert. denied, 496 U.S. 939 (1990))(other citations omitted).  The Supreme Court has further stated that "an otherwise valid conviction should not be set aside if the reviewing court may confidently say on the whole record that the constitutional error was harmless beyond a reasonable doubt." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).  An error is not harmless if "it aborts the basic trial process or denies it altogether." Hutchins, 1991 WL 167036 at *5 (citing Rose v. Clark, 478 U.S. 570, 578 n.6 (1986)).

Here, a review of the whole record demonstrates that the hearing process was fundamentally fair.  Petitioner was represented by counsel, had the opportunity to cross-examine the

expert witnesses, and also presented expert testimony on his own behalf, which likewise contained hearsay evidence.

Moreover, as mentioned above, even if Judge Perretti's rulings were in error, there was sufficient evidence for the judge to conclude by clear and convincing evidence that Sigman was a sexually violent predator in need of further confinement. Namely, Judge Perretti found sufficient evidence to establish that petitioner had "clearly serious difficulty in controlling his sex behaving ... conduct," based on Dr. Carlson's opinion that treatment at the ADTC had failed to mitigate the risk of re-offense. Judge Perretti noted petitioner's own "revelations ... of [his] exceedingly deviant arousal and urges and fantasies, [and] his repetitive acting out upon them," and found that petitioner "suffers from abnormal mental condition and personality disorders that adversely impact his volitional, cognitive, and emotional capacities in such a way as to predispose him to commit sexually violent acts." The judge further concluded that Sigman "has little or no control of his sex-offending behavior, and ... that it is highly likely that he will recidivate if not confined here for care, custody, and further treatment... ." (3T 68-69).

Thus, Sigman has not shown, as required by 28 U.S.C. § 2254(d), that the state court determinations have "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

28

the Supreme Court of the United States," or "resulted in a
decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court
proceedings." Accordingly, Ground Two of the habeas petition
will be denied.

C.   Right to a Jury Trial

As part of his denial of due process arguments, Sigman also
contends that he was denied due process under the SVPA because he
was denied the right to a jury trial. (Petition, Ground Three).

It is clear that under New Jersey law, there is no right to
a jury trial in SVPA hearings. See In re Commitment of J.H.M.,
367 N.J. Super. 599, 606-08 (App. Div. 2003), certif. denied, 179
N.J. 312 (2004)(finding that persons subject to commitment under
the SVPA are not entitled to more constitutional protections than
afforded by the statute, and noting that the SVPA statute does
not provide for jury trials), disapproved of on other grounds in,
In re Civil Commitment of A.E.F., 377 N.J. Super. 473, 493 (App.
Div.), certif. denied, 185 N.J. 393 (2005).

The United States Supreme Court has not decided the issue of
whether due process requires a jury trial in civil commitment
proceedings.[9] Nor has the Supreme Court determined or

_____

[9] But see United States v. Sahhar, 917 F.2d 1197, 1206-07
(9th Cir. 1990)(due process does not provide right to jury trial
in civil commitment proceedings), cert. denied, 499 U.S. 963
(1991). Moreover, it is instructive that, in the context of
federal habeas actions under 28 U.S.C. § 2254, courts have found
no right to a jury trial in civil commitment proceedings. In
Poole v. Goodno, 335 F.3d 705 (8th Cir. 2003), the Court of
Appeals for the Eighth Circuit recently held that because there

incorporated the Seventh Amendment right to a jury for such
cases.[10]

   In Poole v. Goodno, 335 F.3d 705 (8th Cir. 2003), the Court
of Appeals for the Eighth Circuit pointed out that the Supreme
Court has permitted states to make their own procedural rules for
commitment cases.  See id. at 711 (citing Addington v. Texas, 441
U.S. 418, 431 (1979)).  The Eighth Circuit noted that,
"[a]lthough the Court did not speak directly about juries in
Addington, it certainly left it open to states to employ their
own preferred procedures.  It ruled that a reasonable doubt
standard is not required to meet the 'constitutional minimum' for
civil commitments, and the same type of reasoning could be
applied to the type of jury trial issue we face."  Id. at 709.

   Therefore, where there is no clearly established Supreme
Court law holding that due process requires a jury trial in civil
commitment proceedings or that incorporates the Seventh Amendment
right to a jury trial in such cases, see Poole, 335 F.3d at 710-
11, this Court concludes that there is no federal constitutional

---

is no "clearly established" Supreme Court law which would require
a jury trial in cases dealing with civil commitment of sexual
predators, a habeas petition pursuant to 28 U.S.C. § 2254
asserting such an argument must be denied.  335 F.3d at 710-711.

   [10]  The Seventh Amendment to the United States Constitution
states: "In Suits at common law, where the value in controversy
shall exceed twenty dollars, the right of trial by jury shall be
preserved, and no fact tried by a jury shall be otherwise
reexamined in any Court in the United States, than according to
the rules of the common law."  The Seventh Amendment right to a
jury trial does not apply to state court proceedings.  See City
of Monterey v. Del Monte Dunes at Monterey, 526 U.S. 687, 719
(1999).

right to a jury trial in state SVP civil commitment proceedings, and Sigman's claim for relief on this ground will be denied for failure to state a claim of federal constitutional deprivation.

D.   Ineffective Assistance of Counsel Claim

The right to counsel is the right to effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. See Strickland v. Washington, 466 U.S. 668, 686 (1984). Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct. Id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005), cert. denied, Jacobs v. Beard, 126 S.Ct. 479 (2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir. 2001). Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id. The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be
> highly deferential. It is all too tempting for a
> defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy
> for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act
> or omission of counsel was unreasonable. A fair
> assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of

31

> counsel's challenged conduct, and to evaluate the
> conduct from counsel's perspective at the time.
> Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption
> that counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be
> considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v.
Wheatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996).

If able to demonstrate deficient performance by counsel, the
petitioner must also show that counsel's substandard performance
actually prejudiced his defense.  Strickland, 466 U.S. at 687.
Prejudice is shown if "there is a reasonable probability that,
but for counsel's unprofessional errors, the result of the
proceeding would have been different.  A reasonable probability
is a probability sufficient to undermine confidence in the
outcome."  Id. at 694.  The reviewing court must evaluate the
effect of any errors in light of the totality of the evidence.
Id. at 695-96.  Thus, the petitioner must establish both
deficient performance and resulting prejudice in order to state
an ineffective assistance of counsel claim.  Id. at 697; see also
Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

In this case, in Ground Five of his petition, Sigman claims
that his counsel was ineffective because he failed to challenge
the admissibility of the State's expert testimony on the
following grounds: (1) "misuse, misrepresentation and
misinterpretation of actuarial results and what they mean;" (2)

32

failure to adhere to the diagnostic criteria of the DSM when
rendering a diagnosis; (3) failure to adequately support opinions
on risk of re-offense; (4) "failure to advise the court of the
limits of reliability regarding clinical judgment relied upon by
the States's experts;" and (5) failure to adequately challenge
the validity of the Static 99 in predicting risk.  (Petition,
¶ 12, Ground Five).

     In response to the Petition, the State argues that Sigman
fails to identify the specifics of his counsel's alleged
deficiencies.  The State also noted that petitioner's claim of
ineffective assistance of counsel is just another iteration of
his argument concerning the weight of evidence.  The State
contends that Sigman has not proffered any evidence that anything
his counsel allegedly failed to do would have altered the outcome
of the civil commitment proceedings.  Thus, having failed to
establish deficient performance and resulting prejudice, the
ineffective assistance of counsel claim should be denied.

     Sigman filed a traverse in objection to the State's
response.  In his traverse, Sigman specified that his counsel
failed to elicit under either cross-examination or direct expert
testimony the "readily available reported scientific findings
regarding the poor reliability of clinical judgment."
(Petitioner's Traverse at ¶¶ 90-91).  He also contends that his
counsel failed to challenge the limited validity of the actuarial
assessments as to the high likelihood of recidivism, and that

33

counsel failed to challenge the deviation of the state experts from "psycho-diagnostic practice standards." (Id. at ¶¶ 92-97).

After careful review of the record, this Court finds that Sigman has made no showing that his counsel's performance was deficient. Instead, Sigman simply disputes the evidential findings by the trial judge. This Court finds nothing in the record to show that Sigman's counsel did not aggressively and competently represent petitioner. Expert testimony was offered on Sigman's behalf, and counsel also strenuously cross-examined the state experts. Sigman's arguments about his counsel's performance are nothing more than Monday-morning quarter-backing. The record is completely bereft of any attorney incompetence or deficiency. Rather, Sigman's arguments of ineffectiveness of counsel are simply based on a difference of petitioner's opinion with the trial court as to what evidence should have been admitted and relied upon by the court. Consequently, where these evidential claims have been determined to lack merit, there can be no finding of deficient performance or prejudice that would have changed the outcome of the proceeding to support a claim of ineffectiveness of counsel.

Therefore, Sigman has not established a constitutional violation. Nor has he shown, as required under 28 U.S.C. § 2254(d), that the actions of the state courts resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by

34

the Supreme Court in <u>Strickland</u>, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, this ineffective assistance of trial counsel claim for habeas relief will be denied.

## III.   CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue.  <u>See</u> Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## **CONCLUSION**

For the above reasons, this Court finds that the § 2254 habeas petition should be denied on the merits and a certificate of appealability will not issue.   An appropriate Order follows.

DENNIS M. CAVANAUGH
United States District Judge

DATED: 9/3/08